UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LONNIE T. HAWKINS,<br><br>    Plaintiff<br><br>v.<br><br>WASHOE COUNTY, et al.,<br><br>    Defendants | Case No.: 3:24-cv-00330-MMD-CSD<br><br>**Report & Recommendation of U.S. Magistrate Judge**<br><br>Re: ECF Nos. 1-1, 4 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff, who is a detainee at the Washoe County Detention Facility (WCDF) has filed an application to proceed in forma pauperis (IFP) (ECF No. 4) and pro se complaint (ECF No. 1-1).

**I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

1    "[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some
2 particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)
3 (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the
4 benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

5    An inmate submitting an application to proceed IFP must also "submit a certificate from
6 the institution certifying the amount of funds currently held in the applicant's trust account at the
7 institution and the net deposits in the applicant's account for the six months prior to the date of
8 submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been
9 at the institution for less than six months, "the certificate must show the account's activity for
10 this shortened period." LSR 1-2.

11   If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount
12 of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an
13 initial partial filing fee that is calculated as 20 percent of the greater of the average monthly
14 deposits or the average monthly balance for the six-month period immediately preceding the
15 filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid,
16 the prisoner is required to make monthly payments equal to 20 percent of the preceding month's
17 income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody
18 of the prisoner will forward payments from the prisoner's account to the court clerk each time
19 the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

20   Plaintiff's certified account statement indicates that his average monthly balance for the
21 last six months was $18.21 and his average monthly deposits were $48.08.

22   Plaintiff's application to proceed IFP should be granted. Plaintiff is required to pay an
23 initial partial filing fee in the amount of $9.62 (20 percent of $48.08). Thereafter, whenever his

prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## II. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

The complaint also names as defendants Washoe County[1] and Reno Police Department Officers Thomas Casey, Christensen Bryan, Harr Jason, Wesley Leedy, Christopher Johnson, Erik Wilson, and Carl Desantis.

---

[1] The caption of Plaintiff's complaint names Washoe County, but it is not listed with the rest of the defendants in the body of the complaint and there are no allegations against Washoe County.

4

Plaintiff alleges that on October 1, 2023, he was sleeping in his vehicle along with a female passenger when he was awakened by yelling and loud banging on the window as well as spotlights pointed into the vehicle. Plaintiff became aware there were police officers ordering him to exit his vehicle. Plaintiff exited the vehicle and complied with orders to get down on the ground. At that point, he felt a sharp stabbing in his back followed by the loss of physical control causing extreme pain. He was tased repeatedly for several seconds. He alleges that he was handcuffed, his head was pushed into the ground, and officers placed their knees to his mid-back. Painful pressure was applied to his back and neck, which made it difficult to breathe and restricted his airway for 60 to 90 seconds. Plaintiff was in extreme pain and discomfort but complied with the officers' commands. He avers that all the named officers were present and participated in the use of force against him.

Plaintiff claims the officers pursued him in a possible kidnapping matter without even knowing his name. They failed to disclose the reason for his arrest and failed to secure evidence that would prove his innocence. He further contends he was not Mirandized before or after his arrest.

When Plaintiff was in custody, Plaintiff alleges that Thomas Casey created false police reports and refused to document the entire incident of arrest as there was no mention of the use of force, including the use of the taser. He further avers that Defendants acted on false information and inaccurate witness accounts, making the arrest and detention unlawful.

Plaintiff goes on to allege that he was subsequently taken to another location where two individuals were there to collect his DNA. Plaintiff invoked his right to have his attorney present or to see a court order, which were refused. When Plaintiff did not agree to voluntarily submit to having his DNA collected, his head was yanked back and pulled to the point of causing injury.

Several sheriff's deputies and two DNA collectors forced Plaintiff into a restrained position and squeezed his cheeks to force his mouth open and a swab was inserted into his mouth against the surface of the inside of his cheek. Plaintiff could taste blood in his mouth and had pain in his neck.

Finally, Plaintiff contends the Defendants' actions are motivated by racial prejudice due to Plaintiff's African American heritage.

### 1. Washoe County

To the extent Plaintiff seeks to include Washoe County as a defendant, he failed to include allegations that would subject it to liability.

"Under 42 U.S.C. § 1983, [a municipality] is not liable for merely employing a[n] [ ] official who commits a constitutional violation." *Bell v. Williams*, 108 F.4th 809, 824 (9th Cir. 2024); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978) (section 1983 does not impose respondeat superior liability on municipalities).

Municipalities can only be liable for the infringement of constitutional rights under certain circumstances. *Monell*, 436 U.S. at 690-95. "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019).

A plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "A plaintiff must therefore show *deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights." *Horton*, 915 F.3d at 603 (citation and quotation marks omitted, emphasis original).

"To impose liability on a municipality under Section 1983, a plaintiff must prove: "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. County of Orange,* 6 F.4th 961, 973 (9th Cir. 2021) (*Gordon II*) (internal quotation marks and citation omitted).

Washoe County should be dismissed with leave to amend, and if Plaintiff chooses to amend as to Washoe County, he must include factual allegations that subject it to liability in accordance with the authority outlined above.

**2. Excessive Force as to Reno Police Department Officers**

While Plaintiff references the Eighth Amendment, a claim that excessive force was used during the course of an arrest or other seizure of a free citizen is governed by the Fourth Amendment and applies an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc).

"Section 1983 imposes liability on '[e]very person who … subjects, or causes [a plaintiff] to be subjected … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Peck v. Montoya*, 51 F.4th 877, 888-89 (9th Cir. 2022). "In some situations, the Constitution may impose on an officer a duty to intervene to prevent an ongoing constitutional violation." *Id*. at 889 (citing *Koon v. United States*, 518 U.S. 81 (1996); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

"But in general, one does not 'subject' someone to a deprivation of a constitutional right—or 'cause [someone] to be subjected' to such a deprivation —simply by watching others violate the Constitution." *Id*. "To be liable under § 1983, a defendant official 'must be more than

a mere bystander.'" *Id*. (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)).

"[A]n official whose 'individual actions' do 'not themselves rise to the level of a constitutional violation' may be held liable under § 1983 only if the official is an 'integral participant' in the unlawful act." *Id*.

While the Ninth Circuit has not "define[d] the minimum level of involvement for liability under the integral-participant doctrine," "precedents have permitted liability in two situations: those in which (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id*. (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) and citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279-80 (10th Cir. 2008); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560-61 (1st Cir. 1989)).

Plaintiff includes a conclusory statement that all the officers were present and participated in the alleged use of excessive force, but he does not allege how each defendant either personally participated in the use of excessive force or had a duty to intervene. Therefore, Plaintiff's Fourth Amendment excessive force claim should be dismissed, but with leave to amend to assert allegations as to each defendant's role in the use of excessive force.

**3. False Arrest/False Imprisonment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment

provided the arrest was without probable cause or other justification." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted); *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause.").

"Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (citation and quotation marks omitted).

Plaintiff alleges that officers pursued him without knowing his name, and they acted on false information and inaccurate witness accounts. However, he does not include *factual* allegations regarding which officers were responsible for effectuating his arrest. Nor does he allege facts concerning what false information was the basis for his arrest or regarding the inaccurate witness accounts to plausibly allege that he was arrested without probable cause. As such, Plaintiff does not state a colorable claim for false arrest or false imprisonment at this juncture. The claim should be dismissed, but with leave to amend to correct these deficiencies.

Plaintiff should be aware: "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (citing *Heck v. Humphrey*, 512 U.S. 477, 487-88, n. 8 (1994).

"If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some

other bar to suit." *Id*. at 394 (citing *Edwards v. Balisok*, 520 U.S. 641, 649 (1997); *Heck*, 512 U.S. at 487).

### 4. Failure to Secure Evidence

Plaintiff alleges there was a failure to secure evidence that would prove his innocence.

The Supreme Court has "long interpreted th[e] standard of fairness [required by the Due Process Clause] to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479 (1984). "To safeguard that right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *Id.* (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)).

Generally, to establish a deprivation of due process rights for the failure to collect and preserve potentially exculpatory evidence, the plaintiff must show: (1) the evidence was material; and (2) the failure to collect the evidence was in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *United States v. Martinez-Martinez*, 369 F.3d 1076, 1086 (9th Cir. 2004); *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989). To be "material," the evidence must "both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 489.

Negligence or recklessness is insufficient; bad faith requires something more akin to "official animus" or a "conscious effort to suppress exculpatory evidence." *See California v. Trombetta,* 467 U.S. 479, 488 (1984)). The reason for requiring a bad faith showing in this context is "that whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often,

disputed." *Youngblood*, 488 U.S. at 57-58 (citation omitted). In addition, there is an "unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id*. at 58. A plaintiff must "put forward specific, nonconclusory factual allegations that establish improper motive." *Gausvik v. Perez*, 345 F.3d 813, 818 (9th Cir. 2003).

Plaintiff does not allege *who* failed to secure evidence that was exculpatory, *what* the evidence was, *how* the evidence was exculpatory, or factual allegations to establish improper motive. Therefore, this claim should be dismissed; however, Plaintiff should be given leave to amend to attempt to cure these deficiencies.

### 5. *Miranda*

To the extent that Plaintiff alleges his constitutional rights were violated when he was not Mirandized before or after his arrest, he fails to state a claim for relief. In *Vega v. Tekoh*, 597 U.S. 134 (2022), the Supreme Court held that a violation of *Miranda* does not necessarily constitute a violation of the Fifth Amendment right against self-incrimination. The Court also saw "no justification for expanding *Miranda* to confer a right to sue under § 1983[.]" *Id*. at 152. Therefore, this claim should be dismissed with prejudice.

### 6. DNA Collection

#### a. DNA Collection

Insofar as Plaintiff challenges the collection of his DNA as unconstitutional, Plaintiff fails to state a claim for relief. The Supreme Court has held that taking a cheek swab of an arrestee's DNA is a "legitimate police booking procedure that is reasonable under the Fourth Amendment." *Maryland v. King,* 569 U.S. 435, 466 (2013). Plaintiff does not include facts to

state a claim that his Fourth Amendment rights were violated when his DNA was taken with a cheek swab. Therefore, this claim should be dismissed. In an abundance of caution, the dismissal should be with leave to amend so Plaintiff can attempt to assert a colorable claim for relief.

### b. Excessive Force

The court will now address Plaintiff's claim that excessive force was used in collecting his DNA.

As a detainee, Plaintiff's right against the use of excessive force is governed by the Fourteenth Amendment's Due Process Clause. *See Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989). The court utilizes an objective reasonableness standard to evaluate such claims. *Kingsley v. Hendrickson*, 576 U.S. 289, 296 (2015).

Liberally construing the pro se complaint, Plaintiff states a colorable claim that excessive force was used when collecting his DNA when he alleges that his head was yanked back and pulled back to the point of causing injury, and that the swabbing of the inside of his cheek caused him to bleed. Plaintiff may proceed with this claim once he identifies the DNA collectors and/or deputies responsible for this conduct in compliance with the Federal Rules of Civil Procedure, Local Rules, and any applicable scheduling order deadlines.

### 7. Racial Discrimination

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (cleaned up). To prevail on a claim for racial discrimination in violation of the Equal Protection Clause, a plaintiff must demonstrate defendants acted with the intent or purpose to discriminated against the plaintiff based upon

membership in a protected class. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005).

Plaintiff includes a conclusory allegation that the alleged conduct was racially motivated, without alleging any *facts* to support a claim of racial discrimination. Therefore, Plaintiff's racial discrimination claim should be dismissed, but with leave to amend so Plaintiff may attempt to allege facts to support such a claim.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order as follows:

(1) Plaintiff's IFP application (ECF No. 1) should be **GRANTED**; however, within **30 DAYS** Plaintiff must be required to pay an initial partial filing fee in the amount of $9.62. Thereafter, whenever his inmate account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk must **SEND** a copy of this Order to the attention of **Chief of Inmate Services for the Washoe County Detention Facility** at 911 E. Parr Blvd., Reno, NV 89512.

(2) The Clerk should be directed to **FILE** the complaint (ECF No. 1-1).

(3) Plaintiff should be permitted to **PROCEED** with the Fourteenth Amendment excessive force claim against the Doe DNA collectors and/or deputies once Plaintiff learns their identities and seeks to substitute or amend to name them in accordance with the Federal Rules of Civil Procedure, Local Rules and any applicable scheduling order deadlines.

(4) Plaintiff's claim that he was not Mirandized before or after his arrest should be **DISMISSED WITH PREJUDICE**.

(5) Plaintiff's remaining claims should be **DISMISSED WITH LEAVE TO AMEND**.

(6) The Clerk should be instructed to **SEND** Plaintiff the instructions for filing a civil rights complaint by an incarcerated individual and form civil rights complaint by an inmate.

(7) Plaintiff should be given **30 DAYS** from the date of any order adopting this Report and Recommendation to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall check the box for the first amended complaint on the court's form civil rights complaint. If Plaintiff fails to file an amended complaint within the 30 days, the action will proceed only against the Doe defendants on the Fourteenth Amendment excessive force claim.

Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 24, 2024

_____
Craig S. Denney
United States Magistrate Judge